# IN THE UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF MISSOURI

## SOUTHERN DIVISION

Terry D. Owens
Plaintiff Pro'se

    V.

Defendant
Central Bank # KOOOO2095
Co- Defendant Central Bank
charter # X00189569
Co-Defendant Central Bank
charter # XOO126219
Co- Defendant Boone County National Bank
a.k.a. an , Affiliate Member Bank of Central
Bancompany Family of Banks , a.k.a the Secured
Party for the 500 + Missouri Registered Entity's , an
a.k.a. , a (non registered entity )
Co-Defendant Central Trust Bank , a (non registered entity)
a.k.a. The Central Trust Bank ,charter # U00000057
Co-Defendant Central Bancompany , a Privately Held
Holding Co .
Co-Defendant Central Bancompany Inc.
The Corporate Holding Co .
Co-Defendant Central Bancompany Merger Corporation
Co-Defendant James Gerling , Bankcard Officer
Co-Defendant Al Stonum Sr. Vice President &
Bankcard Director
Does A – Z and , Does A-Z Corporate Defendant(s)
( Purposes Pursuant to Discovery )

Case No : 13 – cv – 03433 – JFM
Trial by Jury Demanded Pursuant to

FCRA 15 U.S.C. § 1681n et seq . &
FCRA 15 U.S.C. § 1681o et seq .
Negligence & Neglegent Training
Under Vicarious Liability
Aided in the Agency Relation

Case 6:13-cv-03433-MDH   Document 16   Filed 05/19/14   Page 1 of 27

## PLAINTIFF'S 1ST AMENDED COMPLAINT

1. Comes now , Plaintiff Terry D. Owens . Plaintiff's complaint is based on The Fair Credit Reporting Act 15 U.S.C. § 1681 et seq ., ( FCRA ) . At all times herein mentioned , Plaintiff is a resident of the State of Missouri , and at all times a resident of the County of Howell .

2.                           JURISDICTION AND VENUE

   Jurisdiction of this Honorable Court arises Pursuant to , § 618 Jurisdiction of Courts ; Limitation of Actions [ 15 U.S.C. § 1681p ] , An action to enforce Liability created under this title may be brought in any appropriate United States District Court , without regard to the amount in controversy , or in any other Court of competent jurisdiction , not later than the earlier of (1.) 2 years after the date of discovery by the Plaintiff of the violation that is the basis for such liability ; or (2.) 5 years after the date on which the violation that is the basis for such liability occurs .

3. The Defendant's are located at the following address,es 238 Madison Street , Jefferson City , Missouri 65101 ,131 E Miller St., Jefferson City , Missouri 65101-2915 , 416 East Spring Street , Boonville , Missouri 65233 , 101 W. Commercial St., Lebanon , Missouri 65536 .

4. As such , Defendant(s) are involved in the Credit Lending Business , therefore governed under the law by the Fair Credit Reporting Act 15 U.S.C. § 1681 et seq . Plaintiff brings this action for wrongful actions of the Defendant(s) in the credit reporting of this account , violated the Civil Rights of Plaintiff pursuant to the FCRA 15 U.S.C. § 1681 et seq. And the State of Missouri abides by and adheres to these Laws .

5.      SUBJECT MATTER JURISDICTION  -  FEDERAL COURTS JURISDICTION

   The District Courts shall have original jurisdiction of all civil actions arising under the Constitution . Laws or Treaties of the United States . " 28 U.S.C. § 1331 "

Case 6:13-cv-03433-MDH   Document 16   Filed 05/19/14   Page 2 of 27

6. Generally , [a] case arises under Federal Law where the Federal Law creates the cause of action or where the vindication of a right under State Law necessarily turns on some construction of Federal Law . Federal question jurisdiction is found only where a Federal question appears on the face of a properly pleaded complaint . Caterpillar Inc. v. Williams , 482 U.S. 386 ,392 ( 1987 ) . Here is the one claim that falls within the Court's subject matter jurisdiction on the [b]asis of a Federal question : ( 1.) The FCRA claim 15 U.S.C. § 1681 et seq .

7.                          PARTIES

Plaintiff is a natural person , and at all times a resident of the County of Howell . And at all times a resident of the State of Missouri , and as such [D]efined pursuant to the FCRA , and within the meaning of the FCRA [ 15 U.S.C. § 1681a(c ) ] .

8. Defendant(s) are a credit lender and as such [D]efined by the Fair Credit Reporting Act ( FCRA ) 15 U.S.C. § 1681 as a " furnisher of information " / person within the meaning of the FCRA [ 15 U.S.C. § 1681s – 2 et seq . ] , Co-Defendant Central Bancompany is a 10 Billion Dollar Privately Held Holding Co . Headquarted at 238 Madison St . , Jefferson City , Missouri 65101 .

9. The Holding Company is comprised of thirteen separately charted & branded ( [F]ull service Banks ) ] .Co-Defendant Central Bancompany Inc., is located at 238 Madison St. , Jefferson City , Missouri 65101 . And was created on 6/ 7 / 1971 . Co - Defendant , Central Bancompany Merger Corp., is a Missouri Corporation merged on 3 / 25 / 2005 . And its registered agent is Charles A. Weber located at 238 Madison St. , Jefferson City Missouri 65101 . On information and belief is the Corporation for the merging of all Central Bancompany's member / affiliate banks , all of which are branded [ full service banks ] .

10. Defendant " Central Bank " as used in the True name form only , exists with the Missouri Secretary of State as three separate Corporate filings as ,
1. Central Bank # K00002095 entity creation date 6/ 15 / 1917 , 2. Central Bank # X00126219 entity creation date 2 / 11 / 1981 , 3. Central Bank X00189569 – entity is inactive , entity creation date 2 / 29 / 1988 . and are (a.k.a.) , Central Trust Bank , however there is an entity by the name of " The Central Trust Bank ", ( Charter #

Page 3

11. UOOOOOO57 ), a Trust . Also maintains as it's corporate address as 238 Madison St. , Jefferson City , Missouri 65101 .

12. [N]oting , no filing's found for ( Central Trust Bank ) in the [ True name ] form in the U.C.C. Directory of the Missouri Sec. of State , as such [i]s a [nonregistered entity]. Co-Defendant Boone County National Bank in it's ( [T]rue name ) form is also a [ non registered entity ] however, Boone County National Bank is the ( [S]ecured [P]arty ) for over 500 U.C.C. filings , Co-Defendant Central Bank is also listed as the ( [S]ecured [P]arty ) for over 500 U.C.C. filings , pursuant to the Mo. Sec. of State .

13. Co-Defendant Al Stonum is a natural person and Sr. Vice President & Bankcard Director and an [Officer] of the thirteen branded full service banks . Defendant James Gerling is a natural person , and Bankcard [Officer] , and an [Officer] of the thirteen branded full service banks .

14. DOES A –Z and , DOES A-Z Corporate Defendants are also listed (Pursuant to Discovery Purposes) , and are [ unknown ] to Plaintiff at this time . And Plaintiff reserves the right as such until determined - Pursuant to any and all [ Discovery methods given under Federal Discovery Rules  # 33 , # 34 , and Rule # 36 .] , for the inclusive method of Fact Finding , Pursuant to Plaintiff's Federal Civil Right's Case . When the True names and capacities of said Defendant(s) have been ascertained , Plaintiff will amend complaint accordingly and timely .

15. Plaintiff is informed and believes , and thereon alleges that each Defendant designated herein as a DOE ( individual or Corporate ) is responsible , and or negligent in some other actionable manner , for the events and happenings hereinafter referred to and caused damages thereby to the Plaintiff , as hereby alleged . Defendant(s) , DOES A-Z and , Corporate Does A- Z , are and each of them responsible under the FCRA 15 U.S.C. § 1681 et seq .

16. At all times herein mentioned each of the Defendant(s) was an Officer , Director , Agent , Servant , Employee , and or joint venture of his / her Co – Defendant and each of them , and at all times each Defendant was acting in the full scope of said office , directorship ,

Page  4

17. agency , service , employment , and or joint venture . Defendant(s) authorized , approved , conducted and or ratified the wrongful acts herein . Any reference to – ( " defendant "(s) ). DEFENDANTS , Defendant , Defendant'(s) , without further qualification is meant by Plaintiff to refer to each Defendant , and all of them named herein .

18. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned , Defendant(s) – DOES A-Z and , DOES A-Z Corporate Defendants(s), inclusive , were and are individuals , corporations ,L.L.C.- Limited Liability Companie(s) , Investment Holding Corporation(s), Trust(s) , Merger(s) , aquistion(s) , and or Affiliate(s) , Limited Liability Partnership(s) , General Business Companie(s ) / Corporation(s) , which are Alien to and or ( offshore - overseas , and or outside of the ( [M]eaning and [S]ubject ) to the U.S. and or United States , U.S.A., and or United States of States of America, [F]oriegn to or [A]lien to the (Jurisdiction of or to the U.S. , United States) , Unincorporated Associations , sole proprietorship(s) , and or other entities , including Trusts , in the sense of having giving place to the " Holding Corporation " .

19. And ( fictious registraint(s) ) & (non - registered entity(s)) , acting in the capacity of a secured party , and or behind the guise of a secured party organized and existing under , and by the Laws of the State of Missouri and or the Laws of some other State or Foreign Jurisdiction within it's [M]eaning .

STATEMENT OF THE CASE

&

PLAINTIFF'S PRIMA FACIE EXHIBIT'S , PURSUANT TO FED. R. CIV. P. 10(c) & THE DOCTRINE OF INCORPORATION BY REFERENCE & PLAINTIFF'S STATEMENT OF FACTS

20 . Plaintiff on or about March 2007 opened a checking account at Boone County National Bank , located at 416 East Spring Street , Boonville , Missouri 65233 . Then on or about September of 2007 , Plaintiff applied and was accepted on two Credit Card Application (s) on separate occasions , through Boone County National Bank .

Page 5

21 . Established at and through the Boonville Branch location on or about October 2007 . And all documents and offers were completed there on location . The Credit Card(s) was later mailed to Plaintiff at Plaintiff's post office box , in Prairie Home , Missouri on or about 10/2007 , see Plaintiff's exhibit # 2 .

22 . Plaintiff pulled all three major CRA files for review ; TransUnion , Equifax , and Experian , beginning on - April of 2010 , see Plaintiff's exhibit # 2 TransUnion File , see , Plaintiff's exhibit # 3 Experian file , see Plaintiff's exhibit # 4 Equifax file . Immediately all three CRA's companies were then immediately notified by certified mail to correct and remove the following erroneous and inaccurate items ( Central Trust Bank & Central Bank ,Respectfully) , see Plaintiff's exhibit # 5 (cert. mail green card) , the duplicate TransUnion file , Plaintiff's exhibit # 2 , dated 4/13/2010 copied and mailed to the ( Lang Smith Credit Repair Co. ) see , ( Plaintiff's contract , exhibit # 8 Plaintiff's money order , Plaintiff's exhibit # 10 , cert mail receipt , Plaintiff's exhibit # 9 ) for responding to remove the negative items referred herein as [Central Bank , and Central Trust bank respectfully ] , along with the duplicated Experian file , dated , April 13 , 2010 Plaintiff's exhibit # 3 , and Plaintiff's exhibit # 6 ( cert. mail green card ) , and the duplicated Equifax file dated , April 13, 2010 copied and mailed , see Plaintiff's exhibit # 4 and Plaintiff's exhibit # 7 (cert. mail ) .

23 . Plaintiff has now set forth the 1st in the " Two Prong " process by , [F]irst notifying all three major CRA's , and 2nd by using the "proprietary " responses furnished for ( [V]alidation and [D]isputing ) , erroneous and inaccurate information , provided by the Lang Smith Credit Repair Co . Therefore Plaintiff has now established the final prong in the two prong , [ FCRA notification process ] .

24 . Plaintiff continues to monitor and receive continuous files from the three CRA's , see , Plaintiff's Experian credit file , dated June 11 ,2010 , exhibit # 11 , Plaintiff's exhibit # 12 ( cert . mail green card ) .

25 . Plaintiff's Equifax credit file , dated June 11 , 2010 , exhibit # 21 , Plaintiff's exhibit # 22 ( cert . mail green card ) .

26 . Plaintiff's Experian credit file , dated June 29 ,2010 , exhibit # 15 , Plaintiff's exhibit # 16 ( cert . mail green card ) .

Case 6:13-cv-03433-MDH   Document 16   Filed 05/19/14   Page 6 of 27

27 Plaintiff's Experian credit file, dated June 29, 2010, exhibit # 13, Plaintiff's exhibit # 14 ( cert. mail green card ) .

28 Plaintiff's Experian credit file , dated August 10, 2010, exhibit # 17, Plaintiff's exhibit # 18 ( cert. mail green card ) .

29 Plaintiff's Experian credit file, dated November 18, 2010, exhibit # 19, Plaintiff's exhibit # 20 ( cert. mail green card ) .

30 Plaintiff's TransUnion credit file, dated 6-3-2010, exhibit # 36 .

31 Plaintiff's TransUnion credit file, dated 6-21-2010, exhibit # 37 .

32 Plaintiff's contract re : Trinity Credit Repair Services , service start date, and client services agreement , and signature by Director of operations, Patrick Butler, and accompanied with their acknowledgement letter, see Plaintiff's exhibit # 23 .

33 Trinity Credit Services contacted TransUnion on 12-12-2011, contacted Experian on 12-12- 2011 and 1- 17-2012, re-contacted TransUnion on 2-07-2012 , CSC Credit Services on 2-7-2012 , re-contacted Experian on 3-27-2012 , and 4-17-2012 and 5-14-2012 , re: contact of the erroneous and inaccurate information and referencing ( Central Trust Bank, Central Bank [R]espectfully ) , see Plaintiff's exhibit # 24 .

34 Plaintiff 's dispute letter prepared by Trinity Credit Repair Services , mailed to Defendant(s) letter dated , 02-07-2012 , see Plaintiff's exhibit # 25 .

35 Plaintiff's two page dispute letter prepared by Trinity Credit Repair Services , mailed to Defendant(s), letter dated 3-07-2012 , see Plaintiff's exhibit # 26 .

36 Defendant(s) envelope used to mail back Plaintiff's dispute letter , postmarked March 22, 2012 , see Plaintiff's exhibit # 27 .

37 Plaintiff Experian credit file , dated January 23, 2012 ,exhibit # 28 , Plaintiff's exhibit # 29 ( cert. mail green card ) .

38 Plaintiff's Experian credit file , dated January 24 ,2012 ,exhibit # 29 , Plaintiff's exhibit # 30 ( cert. mail green card ) .

39 Plaintiff's Dispute letter dated Febuary 19, 2013 , see Plaintiff's exhibit # 31 , Plaintiff's # 32 ( cert. mail green card ) .

40 [ N ]ow Defendant , James Gerling states in his letter , dated Febuary 24 , 2012 " Enclosed please find a form that we need to have filled out in order to process the request made in the attached letter . Please fill out and return the form in the envelope provided . " Thank you , Sincerely James Gerling , see Plaintiff's exhibit # 33 . Again , Defendant and Officer James Gerling second letter , dated March 22 , 2012 . [N]ow mentions that the Fair Debt Collection Act (does not apply ) since we are not a third party collector , see Plaintiff's exhibit # 34 .

41 [N]ow Plaintiff's receive's a 3rd letter , from Defendant and Officer Al Stonum dated March 18 ,2013 and [n]ow states that neither the ,[FDCPA or the FCRA] apply . See Plaintiff's exhibit # 35 .

42 Referencing Defendant and Officer Al Stonum's signed letter of March 18 , 2013 see Plaintiff's exhibit # 35 , Defendant signs this letter on an affiliate bank(s) letterhead , with the " Central Bank logo " appearing on top center of the Defendant(s) letter , and bottom center page is " Central Bank ", Jefferson City , Missouri 65101 , 573 / 634 – 1234 Member Central Bank Group . Plaintiff then ran a Query using only the [ True Names ] of Central Trust Bank , Central Bank , Boone County National Bank by way of the Missouri Secretary of State web – site , Corporations section , and utilizing the criteria listed as , [exact match ] and [ only Active Corporations ] the Missouri Secretary of State , stated clearly , and after repeated attempts [ NO RECORDS FOUND FOR THE SEARCH CRITERIA ] , this was confirmed , see Plaintiff's exhibit # 1 .

43 Plaintiff's Residential Merged Credit Scores shows Defendant(s) , (Central Trust Bank & Central Bank ) and the [Prima facie] - damages to Plaintiff credit scores , see Plaintiff's exhibit # 38 , # 41 , this caused a direct interference of Plaintiff's Insurance business . Plaintiff had worke[d] a senior market of selling Senior Insurance products , and [is] a lead driven business , and thus requires " Direct mail Leads " therefore requiring good or excellent credit , in order to finance leads . Approximate annual cost per Agent of $55,000.00. And without a good credit score or at least a high end credit card , it became completely impossible to continue , [f]orcing Plaintiff to use a ( High interest rate personal loan ) from Nixa , Missouri called Springleaf Financial to fund Plaintiff's Insurance business , see Plaintiff's exhibit # 39 .

Page 8

44  In accordance to all the financial concerns , including Plaintiff [f]orced out of a home and farm Plaintiff's health gave way to a permanent form of a chronic health condition , diagnosed now with a severe form of " chronic fatigue syndrome " , see the Diagnosed report from Nurse Practioner Dave McVickers , Plaintiff's exhibit # 40 . The Medical file is complete , true , accurate and [N]otarized , see Plaintiff's exhibit's Med # A , and Med # B .

- - -     FCRA  STATUTORY  BACKGROUND     - - -

45.  The FCRA imposes a [D]uty upon [f]urnishers of credit information to CRA's regarding a consumers credit . 15 U.S.C. S 1681s -2(a)(1)(A) . Upon receiving notice from a CRA that a consumer disputes the information a furnisher has provided , the furnisher is required to :
( 1 ) investigate the veracity of the disputed complaint ;
( 2 ) review the information provided by the credit reporting agency ;
( 3 ) correct any inaccuracies uncovered by the investigation ;
S 1681- 2(b)(1)(A)-(D) While a consumer cannot bring a private cause of action for a violation of a furnisher's duty to report truthful information , a consumer may recover damages for a willful violation of 15 U.S.C. § 1681-2(b)(1)(A)-(D) . Stafford v. Cross County Bank , 262 F. Supp. 2d 776 , 782-83 ( W.D. Ky. 2003 ) . Where a furnisher is found to have [W]illfully violated § 1681s-2(b)(1) , the consumer / plaintiff may recover " [A]ctual damages sustained by a consumer as a result of the failure or damages of not less than $100 and not more than $1000 . " 15 U.S.C. § 1681n (a)(1)(A) . In order to recover actual damages , a plaintiff must show that the violation of the statute caused the loss of credit , and or other harms , such as :
( an unapproved home mortgage loan )
( an unapproved home improvement loan " HELOC " )
( an unapproved personal loan )
( an unapproved business loan )
( an unapproved credit card application )
( a damaged credit report )
( a reduced credit score )
( a reduction of lines of credit )

Page  9

46 . Congress enacted the Fair Credit Reporting Act (" FCRA") , 15 U.S.C. §§ 1681 – 1681x , in 1970 " to ensure fair and accurate credit reporting , promote efficiency in the banking system , and protect consumer privacy . " Safeco Ins. Co. of Am. V. Burr , 551 U.S. 47 , 127 S.Ct. 2201 , 2205, 167 L.Ed.2d 1045 (2007) . As an important means to this end , the Act sought to make " consumer reporting agencies exercise their ( [g]rave responsibilities), [in assembling and evaluating consumers' credit , and disseminating information about consumers' credit] with fairness , impartiality , and a respect for the consumer's right to privacy ." 15 U.S.C. § 1681(a)(4) . In addition , to ensure that credit reports are accurate , the FCRA imposes some duties on the sources that provide credit information to CRA's , called " furnishers " in the statute . Section 1681s-2 sets forth " [r]esponsibilities of furnishers of information to consumer reporting agencies , " delineating two categories of responsibilities . Subsection (a) details duty " to provide accurate information ", and includes the following duty :

(3) Duty to provide notice of dispute

47. If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer , the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer .

§ 1681s-2(a)(3) .

48. Section 1681s-2(b) imposes a second category of duties on furnishers of information . These obligations are triggered "upon notice of dispute " -- that is , when a person who furnished information to a CRA receives notice from the CRA that the consumer disputes the information . See § 1681i(a)(2) (requiring CRAs promptly to provide such notification containing all relevant information about the consumer's dispute ) .

Page 10

49. Subsection 1681s-2(b) provides that, after receiving a notice of dispute, the furnisher shall :

(A) Conduct an investigation with respect to the disputed information :
(B) Review all relevant information provided by the [CRA] pursuant to § 1681i(a)

(2) ...;

(C) report the results of the investigation to the [CRA] ;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information ...; and

50. (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) ...(i) modify ... (ii) delete[or] (iii) [P]ermantly block the reporting of that item of information [to the CRAs] .

51. § 1681s-2(b)(1). These duties arise only after the furnisher receives notice of dispute from a CRA ; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b) .

52. The FCRA expressly creates a private right of action for Willful or Negligent noncompliance with its requirements . §§ 1681n & o ; see also Nelson , 282 F.3d at 1059 . However , § 1681s-2 limits this private right of action to claims arising under subsection (b) , the duties triggered upon notice of a dispute from a CRA . § 1681s-2(c) (" Except[for circumstances not relevant here] , § 1681n and § 1681o of this title do not apply to any violation of subsection (a) of this section , including any regulations issued thereunder ." ) Duties imposed on furnishers under subsection (a) are enforceable only by Federal or State agencies . See § 1681s-2(d) .

Page 11

--- FCRA STATUTORY BACKGROUND REGARDING PUNITIVE DAMAGES ---

THE UNITED STATES SUPREME COURT STANDARD OF REVIEW

53. The FCRA provides for an award of [P]unitive damages for [W]illful noncompliance with the Statute in an amount as the Court may allow . 15 U.S.C. § 1681n(a)(1)(B)(2) . The 8th Circuit has held that while [M]alice or evil motive is not required to award punitive damages pursuant to 15 U.S.C. § 1681n , the Defendant must have committed a willful violation by ( knowingly and intentionally ) committing an act in conscious disregard for the rights of others . Stevenson 987 F. 2d at 293-94 . The Supreme Court approach to review the Constitutionality of a punitive damage award is laid out in the case of , State Farm Mutual Ins. Co. v. Campbell , 538 U.S. 408 , 418 (2003) . In State Farm the Supreme Court noted that punitive awards designed as tools of deterrence and retribution , have upward limits imposed by the elementary notions of fairness contained in the Due Process Clause . 538 U.S. at 416-17 . The Supreme Court laid out three guideposts for Courts to consider in reviewing the Constitutionality of [P]unitive awards :

54. ( 1. ) The [R]eprehensibility of the Defendant(s) conduct ;
55. ( 2. ) The disparity between the [A]ctual harm suffered by the Plaintiff and the size of the [P]unitive damage award ; and
56. ( 3. ) The difference between the punitive damage awarded and or the civil or criminal penalties imposed or authorized for comparable misconduct .
The Court stated that the [R]eprehensibility of the Defendant(s) conduct is the most important factor in determining the Constitutionality of the [P]unitive award . Id. at 419 . In considering this first guidepost , the Court stated that the following factors are important :

57. ( 1 ) whether the harm caused was physical or economic ;
58. ( 2 ) whether the conduct showed an Indifference or reckless disregard for the health or safety of others ;

Page 12

59 . ( 3 ) whether the target of the conduct was financially vulnerable ;

60 . ( 4 ) whether the conduct involved re-peated actions or merely the result of an isolated instance ; and

61 . ( 5 ) whether the harms was caused by intentional malice , trickery , or deceit or was rather accidental .Id .

DEFENDANT(s) ACTIONS RE: THE FCRA § 623 & THE PUNITIVE DAMAGE STANDARD

THE STANDARD " HELD " UNDER STATE FARM MUTUAL Ins. Co .  v. CAMPBELL 408 , 418 ( 2003 )        --- ACCOMPIED WITH PLAINTIFF'S PRIMA FACIE EXHIBIT'S ---

62 . FIRST CRITERIA -- Similar to the situation in State Farm , Plaintiff is financially and physically harmed as a direct  result of Defendant(s) failure to comply with § 623 of the FCRA , Plaintiff now shows  the ongoing financial and physical ailments , are a direct result from the continual " Financial Distress " , resulting from the Defendant(s) actions listed herein , who have ( Repeated , and with Deliberateness , and with a Willful and Negligent behavior ) by failing to comply with § 623 Responsibilities of furnishers of information to the CRAs . Plaintiff supports this with [ Prima facie evidence / documents] , see Plaintiff's Exhibit(s)  # 1 - # 41 . Defendant(s) and Bankcard Officer James Gerling , and Sr. Vice President & Bankcard Director Al Stonum , (and others to be named ) , have stated in writing , ( we are not a 3rd party collector , and the FDCPA nor the FCRA  apply to Plaintiff's [credit files] ( emphasis added  ) . Plaintiff's 1st criteria has been met .

63 . SECOND CRITERIA -- Similiarily , because Defendant(s) action's that occurred were repeated , see Plaintiff's exhibits # 1 - # 41 . It can now be said that Defendant(s) conduct displayed a direct indifference and a reckless , repeated and deliberate disregard for the Health and Safety of Plaintiff . Plaintiff's 2nd  criteria has been met .

64 . THIRD CRITERIA -- Regarding the 3rd factor , Plaintiff has now shown Financial vulnerability . Plaintiff was [F]orced to use a " High interest Rate -- Personal Loan " to fund Plaintiff's Insurance Business , see Plaintiff's exhibit # 39 . Therefore Defendant(s)

Page 13

65 . James Gerling Bankcard Officer , and Sr. Vice President and Bankcard Director Al Stonum ( and others to be named ) repeated actions resulted in Plaintiff's (negatively impacted credit score ) , see Plaintiff's exhibit # 38 ,# 41 . However the [F]actor laid out in State Farm , does not require that the Defendant target the victim specifically because of his vulnerability , but rather requires only that the target be financially vulnerable . Therefore Plaintiff's has met not only , the financial vulnerability criteria , but was [R]epeatedly and [W]illfully and [S]pecifically targeted for in excess of [n]ow four years , see Plaintiff's exhibits # 33 , 34 , 35 . Plaintiff's 3rd criteria has been met .

66 . FOURTH CRITERIA -- Plaintiff must prove , was the conduct the result of repeated actions , or an isolated incident . It appears that the Supreme Court has interpreted this factor to require that the similar reprehensible conduct be committed against various parties , rather than repeated reprehensible acts within the single transaction with the Plaintiff . See BMW of N. AM., Inc. v. Gore , 517 U.S. 559 , 576 – 77 (1996) ( in considering the 4th factor , reviewing whether Defendant'(s) actions in this instance " formed part of a nationwide pattern of tortuous conduct " ) ; see also State Farm , 538 U.S. at 423 looking for indications that the " conduct in question replicates the prior ' transgression ' against other insurds in determining whether punitive damage award was justified ; Willow Inn. Inc. v. Pub. Serv. Mut.Ins.Co., 399 F. 3d 224 ,232 (3d Cir. 2005 ) , ( noting that the District Court improperly interpreted the fourth factor to mean " a pattern of contemptible conduct within one extended transaction " rather than " specific instances of similar conduct the Defendant in relation to other parties " ) .

67 . Plaintiff has [n]ow shown on three separate occasions , and by two separate Defendant(s) / Officer(s), see Plaintiff's exhibits # 33 , # 34 , and # 35 , and by way of Defendant(s) repeated signed documents / statements , see again , Plaintiff's exhibits # 33 , # 34 ,# 35 that Defendant(s) mentioning that the [ ( FDCPA ) and ( FCRA ) does not apply] , because we are not a 3rd party collector ( emphasis added ) . Therefore the 4th criteria has yet to be ascertained in respect to whether this was a local anomaly or a consistent statewide pattern of additional (client abuse ) .

Case 6:13-cv-03433-MDH   Document 16   Filed 05/19/14   Page 14 of 27

68 . FIFTH CRITERIA – The Court [m]ust consider whether actions were the product of intentional malice as opposed to mere accident . The Plaintiff has [n]ow shown factual knowledge of an ongoing , and intentional as well as a wreckless situation that continually occurred , as to establish a pattern , that will support a finding of intentional - [ Malice , Trickery or Deceit ] . See Plaintiff's Prima facie exhibit's # 33 ,# 34 , # 35 . , Defendant's have maintained continuously that the FDCPA and that the FCRA does not apply , ( because we are not a third party collector ) . Defendant(s) have violated § 623 of the FCRA continuously , and now in excess of four years . Defendant(s) repeated actions caused Plaintiff the inability to receive meaningful financing , and thus resulted in Plaintiff [f]orced out of a financial services business , home and farm see , Plaintiff's exhibits # 38 , 39 . Plaintiff's 5th criteria has been met .

---        VICARIOUS LIABILITY STANDARD        ---

69 . An employer can be held liable for the actions of their employees under certain situations . First , an employer may be held liable for its employee's acts if the employer authorized such conduct , either expressly or implicitly (" actual authority "). In re : Atl.Fin Mngt., Inc., 784 F.2d 29 , 31 (1st Cir 1986 ) . An employer may be also liable under the respondent superior rule , in which an employer is liable for acts committed by an employer if the employee acts (1) in furtherance of his or her employer's business , and (2) within the scope of his or her employment Harris v. United States , 718 F.2d 654 , 656 ( 4th Cir. 1983 ) . A 3rd form of vicarious liability is apparent authority , under which an employer is liable to a third party for the acts of an employee with respect to that third party , when the employee exercises a power they do not have if the third party " could reasonably interpret acts or omissions of the [ employer ] as indicating that the [employee] has authority to act on behalf of the[employer] . " Metco Prods., Inc. v. NLRB , 884 F.2d 156 ,159 (4th Cir. 1989 ) .

Page  15

## SUPREME COURT EXPLANATION OF THE " AIDED IN THE AGENCY RELATION "

## AND THE COURT'S ANALYSIS

70 . As a general rule , apparent authority is relevant where the agent purports to exercise a power which he or she does not have , as distinct from where the agent threatens to misuse actual power ... When a party seeks to impose vicarious liability based on an agents misuse of delegated authority , the ... aided in the agency relation rule , rather than the apparent authority rule , appears to be the appropriate form of analysis .

71 . Burlington Industries , Inc v. Ellerth 524 U.S. 742 , 759 -60 (1998). Under the aided in-the – agency – relation rule , an employer may be liable for the tort of an employee if the employee " was aided in accomplishing the tort by the existence of the agency relation . " Restatement (Second) of Agency § 219(2((d) " . Because , " most workplace tortfeasers are aided in accomplishing their tortuous objective by the existence of the agency relation " through proximity "[t]he aided in the agency relation standard ... requires the existence of something more than the employment relation itself ." Ellerth , 542 U.S. at 760 .

## SUPREME COURT EXPLAINED

72 . An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment ... For example , when a salesperson lies to a customer to make a sale , the tortuous conduct is within the scope of employment because it benefits the employer by increasing sales , even though it may violate the employer's policies .

73 . A corporation is not only liable for its own torts , but for the torts of its agents committed within the scope of the agent's authority and course of employment , even though it did not authorize or ratify the act or forbade it .

74 . Officers , agents , servants and employers who violate a duty owed to third persons are liable to such persons for their torts .

Page  16

## CORPORATE  LIABILITY

75 .  The law is ([W]ell settled) that a corporation is not only liable for its own torts but the torts of its agents committed within the scope of the agent's authority and course of employment , even though it did not authorize or ratify the act . or forbade it . [ 19 C. J. S. Corporations  §  1260 ; 13  AM. Jur., Corporations § 1118 ] .

76 .  The general rule is that (Officers , Agents , who violated a [d]uty owed to third persons [are liable] to such persons for their torts .

77 .  The Officer or Agent committing the tort is of course personally liable , as well as the Corporation , and according to the prevailing view , the corporation and the officer or agent may be sued jointly for that tort  .

78 .  When an Officer or Director commits or participates in the commission of a tort , whether or not it is also by or for the corporation , he [i]s liable to third persons injured thereby , and it does not matter what liability attaches to the corporation for the tort ( 13 Am.Jur., Corporations  §  1086 at page  1018  ) .

## NEGLIGENT -- WANTON – TORTIOUS SUPERVISION

79 .  To  establish  a  claim  for  negligent  supervision , a plaintiff  must  show  :

( 1. )  The employer knew or should have known of the employee's dangerous proclivities , and ;

80 . ( 2. ) The employer's negligent was the proximate cause of the plaintiff's injuries ; see , -- Gibson v.  Brewer , 952 S.W.2d 239 ,246 (Mo. 1997) , citing Gaines v. Monsanto Co., 655 S.W.2d  568 ,571 (Mo. App. 1983) . See also  McHaffie v. Bunch ,891 S.W.2d 822 , 825 – 26 (Mo. Banc 1995) ; Porter v.  Thompson , 357 Mo. 31 , 206 S.W. 2d 509 , 512 (1947) .

81 .  A cause of action for negligent supervision is established in circumstances where :

82 .    A master is under a [d]uty to exercise reasonable care so to control his servant while acting " outside the scope of his employment " as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of harm to them , if

83 . ( a ) the servant

84 . (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant , or
(ii) is using a chattel of the master , and

    ( b ) the master

85 . (i) knows or has reason to know that he has the ability to control his servant , and

    (ii) knows or should know of the necessity and opportunity for exercising such control .

86 .    Restatement ( Second ) of Torts § 317 ( 1965 ) ( emphasis added ) ; see Gibson v. Brewer , 952 S.W. 2d 239 , 247 (Mo. Banc 1997 ) ( recognizing a negligent supervision cause of action as [d]efined in Restatement ( Second ) § 317 , but refusing to recognize negligent failure to supervise clergy ) ; and Reed v. Kelly , 37 S.W. 3d 274 , 277 ( Mo. App. E.D. 2000 ) ( citing Restatement ( Second ) § 317 , in defining a [n]egligent supervisor cause of action and noting , " this cause of action also requires [e]vidence that would cause the employer to [f]orsee that the employee would create an unreasonable risk of harm , outside the scope of his employment (emphasis added ) . In Missouri , generally the elements of the " Prima Facie " negligence claim are the familiar ones

87 . ( 1 .) A duty by the defendant to conform his conduct to a particular standard of care ;
88 . ( 2 .) A breach of that duty ;
89 . ( 3. ) proximate causation , and ;
90 . ( 4. ) injury .
91 . " Missouri courts defined actual damages to mean some actual loss , hurt or harm resulting from the illegal action from the invasion of a legal right . " citing 22 Am. Jur. 2d Damages § 2 (1988) .

Page  18

92 . General damages ... include such matter as mental or physical pain and suffering , inconvenience , or the loss of [e]njoyment of life , which cannot be definitively measured in monetary terms [.] "' see 22 Am. 2d Damages § 42 ( 2003 ) .

DIRECT   CORPORATE   LIABILITY

93 . Punitive damages may be awarded only if the claimant proves Defendant is liable for Compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages are awarded [ (1) Fraud , (2) mailice , (3) Willfully or wanton conduct ] .

94 . Punitive damages may be awarded against ... a corporation , [ only if ] the officer , director , or manager of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages .

95 . The -- Defendant(s) listed herein ---- # 1 . Central Bank charter # K00002095 ; ---- Co-Defendant  # 2. Central Bank , charter # X00126219 ; ---- Co-Defendant # 3. Central Bank charter # X0018569 [ Enitity is inactive ] and ; ---- Co-Defendant # 4 . The 500 U.C.C. filings listing Central Bank as the Secured Party ; ---- Co-Defendant # 5 . The Central Trust Bank , a.k.a. Central Trust Bank , see charter # U00000057 ; ---- Co-Defendant # 6 . Central Bancompany , a privately held company ; ---- Co-Defendant # 7. Central Bancompany Inc. , The Corporate Holding Co . ---- Co- Defendant # 8 . Central Bancompany Merger Corporation . --- Co- Defendant # 9 . Boone County National Bank the Secured Party , and  Affiliate member Bank , including the 500 + entity's listed as the Secured Party ,( and others to be named pursuant to discovery including ) -- ( DOES A-Z individual and corporate) , are all vicariously liable under the " Aided in the Agency Relation " for the ongoing and continuous tortious conduct of --- Co-Defendant(s) # 10 . James Gerling Bankcard Officer , and --- Co-Defendant # 11 . Al Stonum Sr. Vice President & Bankcard Director , for Willfully and Negligently violating § 623 of the FCRA .

96 . The Defendant(s) had an " Affirmative Duty " to follow reasonable procedures including those that would have prevented the continuous " erroneous and inaccurate " reporting  to the three major CRA's .

Page  19

97 . The Defendant(s) were prohibited under FCRA § 623 to continue to report to the three CRA's " erroneous and inaccurate " information .

98 . The referenced " erroneous and inaccurate " information has become permanent .

99 . Upon information and Belief , Defendant(s) have comprised Plaintiff's three credit files , along with its relationship with the various CRA's in repeating "erroneous and inaccurate " information since at least April of 2010 .

100 . All Defendant(s) have knowningly , repeatedly , Willfully , and Negligently and Purposely in this Tortious conduct , Violated the provision stated in FCRA § 623 , in the following respects :

101 . (a) falsely and purposely and continuously reported " erroneous and inaccurate " information to the three CRA's .

102 . (b) falsely and purposely and continuously reporting " erroneous and inaccurate " information in Violation of FCRA § 1681n .

103 . (c) falsely and purposely and continuosly reporting " erroneous and inaccurate " information in Violation of FCRA § 1681o .

104 . The acts and conduct of all Defendant(s) as mentioned herein , were knowingly and intentionally and repeatedly committed in a conscious and " Tortious " disregard to the " Civil Rights " of Plaintiff .

## COUNT ONE UNDER FCRA

105 . The Plaintiff is a "consumer" within the meaning of the FCRA [ 15 U.S.C. § 1681a(c) ]

. 106 . The Defendant(s) is a " furnisher of information " / person within the meaning of the FCRA [ 15 U.S.C. § 1681s- 2 et seq . ]

107. Failure to do and investigation section § 623 Responsibilities of furnishers of information to consumer reporting agencies :

108 .             (8) Ability of consumers to dispute Information Directly with furnisher .
(A) In general . The Federal banking agencies , the National Credit Union Administration ,
and the Commission shall jointly prescribe regulations that shall identify the
circumstances under which a furnisher shall be required to reinvestigate a dispute .
concerning the accuracy of information contained in a consumer report on the consumer
, based on a direct request of a consumer . :

109 . (E) Duty of person after receiving notice of dispute . After receiving a notice of
dispute from a consumer pursuant to subparagraph (D) , the person that provided the
information in dispute to a consumer reporting agency shall –(i) conduct an  investigation
with respect to the disputed information ; (ii) review all relevant information provided by
the consumer with the notice ; (iii) complete such person's investigation of the dispute
and report the results of the investigation to the consumer before the expiration of the
period under section 611(a)(1) within which a consumer reporting agency would under
be required to complete its action if the consumer had elected to dispute the
information under that section ; and ( the Defendant(s) has failed to do this ) (iv) if the
investigation finds that the information reported was inaccurate , promptly notify each

110 . consumer reporting agency to which the person furnished the inaccurate
information of that determination and provide to the agency any correction to that
information that is necessary to make the information provided by the person accurate .
111 .    (7) Negative Information
(A) Notice to Consumer Required
(i) In General . If any financial institution that extends credit and regularly and in the
oridinary course of business furnishes information to a consumer reporting agency
described in section 603(p) furnishes negative information to such agency regarding
credit extended to a consumer , the financial institution shall provide a notice of such
furnishing of negative information , in writing , to a consumer .
112 . (ii) Notice effective for subsequent submissions . After providing such notice , the
financial institution may submit additional negative information to a consumer reporting
agency described in section 603(p) with respect to the same transaction , extension of
credit , account , or customer without providing additional notice to the consumer .

Page  21

113. (B) Time of Notice

(i) In General. The notice required under subparagraph (A) shall be provided to the consumer prior to, or no later than 30 days after, furnishing the negative information to a consumer reporting agency described in section 603(p).

114. Coordination with new account disclosures. If the notice is provided to the customer prior to furnishihg the negative information to a consumer reporting agency, the notice may not be included in the initial disclosures provided under 127(a) of the Truth and Lending Act.

115. (C) Coordination with other disclosures. The notice required under subparagraph (A) --

(i) may be included on or with any notice of default, any billing statement, or any other materials provided to the consumer; and

(ii) must be clear and conspicuous.


116. § 616 Civil Liability for Willful Noncompliance [ 15 U.S.C. § 1681n ]

(a) In General. Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

117. (1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $ 1,000; or

118. (B) in the case of liability of a natural person for obtaining a consumer report under false prentenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $ 1,000, whichever is greater;

119. (2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with any reasonable attorney's fees as determined by the Court.


Page 22

120 . Defendant(s) violated the FCRA by failing to conduct a proper investigation of the Plaintiff's disputes based on continuous information that the Defendant(s) had filed with the credit reporting agencies . Defendant(s) failed to review all revelant information provided to them by the Plaintiff . And it failed to direct such consumer reporting agencies to delete inaccurate information about the Plaintiff from the files maintained by them .

121. In addition , Defendant(s) Willfully and Maliciously Defamed the Plaintiff by repeatedly reporting information about Plaintiff to various third parties i.e. the credit bureaus which it knew , or reasonably should have known , was false . As a result of such actions the Plaintiff has had his Credit Score significantly reduced and credit card lines reduced , resulting in the complete loss of a once successful financial services business . This erroneous and inaccurate information has been reported in all three of Plaintiffs credit reports since - April of 2010 to Present , and continually accrues pursuant to - § 618 Limitation of Actions (2.) 5 years after the date on which the violation that is the basis for such  Liability occurs . ( Plaintiff Demands [ $ 5,475.000.00 ] ) , for these violations based on each day , times  every month , times all three credit reports , times per each Defendant , individual and corporate who has and  was involved in the reporting of this inaccurate  and  erroneous  information  , and breaking  the law .

## COUNT TWO UNDER FCRA

122 . Reporting erroneous and inaccurate information :
123 .  [15  U.S.C. § 1681s-2]
124 . (a) Duty of Furnishers of Information to provide Accurate Information
125 . (1) Prohibition
126 . (A) Reporting information with actual knowledge of errors . A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate .
127 . (B) Reporting information after notice and confirmation of errors . A person shall not furnish information relating to a consumer to any consumer reporting agency if

Case 6:13-cv-03433-MDH   Document 16   Filed 05/19/14   Page 23 of 27

(i)    The person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and

(ii)   The information is, in fact inaccurate.

128.   § 616  Civil Liability for Willful noncompliance [ 15 U.S.C. § 1681n ]

(a)  In general. Any person who willfully fails to comply with any requirement imposed Under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

129.   ( 1) (A) any actual damages sustained by the consumer as a result of the failure or,

Damages of not less than $100 and not more than $1,000; or

130.   ( B ) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $ 1,000, whichever is greater;

131.   ( 2 ) such amount of punitive damages as the court may allow; and

( 3 ) in the case of any successful action to enforce any liability under

this section, the costs of the action together with reasonable attorney's

fees as determined by the court.

132.   ( Plaintiff demands [ $ 5,475.000.00 ] ), for these violations based on each day, times every month, times all three credit reports, times per each Defendant individual and corporate who has and was involved in the reporting of this inaccurate and erroneous information, and broke the law. And continually accrues pursuant to § 618 Limitation of actions (2.) 5 years after the date on which the violation that is the basis for such Liability occurs.

Page  24

## COUNT THREE UNDER FCRA

133      § 617 Civil Liability for Negligent noncompliance [ 15 U.S.C. § 1681o ]

134 .      ( b ) In General . Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

    135.    (1) Any actual damages sustained by the consumer as a result of the failure ; and

    136 . ( 2) In the case of any successful action to enforce any liability under this section , the costs of the action together with reasonable attorney's fees as determined by the court .

135 .      ( b ) Attorney's fees . On a finding by the court that an successful pleading , motion , or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment , the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading , motion , or other paper .

  * Plaintiff's loss of personal loan's

  * Plaintiff's loss of business loan's

  * Plaintiff's Damaged credit scores

  * Plaintiff's Damaged credit report(s)

  • Plaintiff's Damaged reputation

  • Plaintiff's loss of Business and ongoing loss of Business Revenue etc.

136 . Plaintiff Demands  -- Compensatory Damages in the amout of $5,000.000.00

137 . Plaintiff Demands -- Treble Damages in the amount of $ 15,000.000.00 see Vermont Agency of Natural Resources v. United States ex rel Stevens 529 U.S. 765 , 785 -86 , 102 S.Ct. 1858 . 146 L.Ed.2d 836 ( 2000 ) . [t]he very idea of treble damages reveals an intent to punish past , and to deter future unlawful conduct , not to ameliorate the liability of wrongdoers .

Case 6:13-cv-03433-MDH   Document 16   Filed 05/19/14   Page 25 of 27

138 . Plaintiff Demands -- Punitive Damages in the amount of $ 150,000.000.00 , see --- State Farm Mutual Insurance Co. v. Campbell , 538 U.S. 408 ,418 ( 2003) ; Willow Inn Inc. v. Pub. Serv. Mut.Ins. Co. 399 F.3d. 224 , 232 (3d Cir. 2005) ; Gore 517 U.S. at 581 , 116 S.Ct. 1589 -- Justice SCALIA , dissenting . I adhere to the view expressed in my dissenting opinion in BMW of North America. Inc. v. Gore , 517 U.S. 559 ,598 – 99 , 116 S.Ct. 1589 , 134 L.Ed.2d 809 (1996) , that the Due Process Clause provides no substantive protections against " excessive " or ' unreasonable ' " awards of punitive damages " . I am also of the view that the punitive damages jurisprudence which has sprung forth from BMW v. Gore is insusceptible of principled application ; accordingly , I do not feel justified in giving the case stare decises effect . See id., at 599 . 116 S.Ct. 1589 . I would affirm the judgement of the Utah Supreme Court .

139 . Plaintiff Demands – Hedonic Damages in the amount of $ 15,000.000.00 , for the ongoing physical ailments and [c]ontinued home health care costs , and for the complete loss of ( [E]njoyment of life and Liberties associated as such ) , see – McGuire v. City of Santa Fe 954 F.Supp 230( D.N.H.M. 1996 ) ; Banks v. Sunrise Hospital 102 P.3d 52 , 120 Nev . 822 .

## SUMMARY

140 . Plaintiff has contacted the Defendant(s) multiple times and for in excess of 4 years regarding § 623 of the FCRA , prior to the filing of this Complaint . And Defendant(s) has failed to " follow the rules of the [ FCRA ] " in its [e]ntirety .

I HEREBY CERTIFY THAT A COPY OF THE FOREGOING , PLAINTIFF'S 1ST AMENDED
COMPLAINT and SUMMONS :

TERRY D OWENS   v . CENTRAL BANK et al . Case No : 6:13-cv-03433-JFM , And all
Member / Affiliate Banks / Holding Co's./ Secured Party(s) , And all Co-Defendant's including
James Gerling , Al Stonum and DOES A – Z , DOES A – Z Corporate , listed within this
Complaint at the following business addresse's : 238 Madison St. Jefferson City , Missouri
65101 ; 416 E. Spring St. Boonville , Missouri 65233 & 101 W. Commercial St. , Lebanon ,
Missouri 65536 . Has been served upon all the Defendant(s) Affidavit of service of process
service receipt to be submitted to the clerk of Court :

On  or  about  this  _____

Terry D Owens
4174 State Route 17
Pomona , Missouri 65789