# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| TERRY D. OWENS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 6:13-cv-03433-MDH |
| CENTRAL TRUST BANK, et al., | ) ) ) |
| Defendants. | ) |

## ORDER

Before the Court are cross motions for summary judgment (Docs. 72, 86, 88) and various other procedural motions (Docs. 80, 96, 107, 125, 134) filed by the parties. Upon careful consideration of the issues presented and the legal arguments provided by the parties, the Court hereby **GRANTS** Defendants' motions for summary judgment (Docs. 86, 88), **DENIES** Plaintiff's motion for summary judgment (Doc. 72), and **DENIES** the parties' various other motions (Docs. 80, 96, 107, 125, 134).

## BACKGROUND

On February 24, 2014, the Court granted Plaintiff leave to proceed with the present case in forma pauperis. Plaintiff, proceeding pro se,[1] filed an initial complaint that named more than ten defendants and included twenty-six pages of single-spaced writing that "intermix[ed] legal arguments, allegation[s] of fact, and references to missing exhibits." The complaint appeared to assert claims under the FDCPA and FCRA. Defendants moved to dismiss Plaintiff's initial complaint for failure to comply with the pleading requirements of Federal Rules of Civil Procedure 8 and 10(b). The Court agreed with Defendants that "it is difficult to decipher what

---

[1] The Honorable Judge Motz denied Plaintiff's motion for appointment of counsel.

specific allegations are made against them." However, given Plaintiff's pro se status, the Court denied Defendants' motion to dismiss and instead allowed Plaintiff to amend his complaint.

Plaintiff filed a first amended complaint on May 19, 2014. Plaintiff's first amended complaint asserted various FCRA claims against ten named defendants and 52 unnamed defendants. Defendants moved to dismiss Plaintiff's first amended complaint for failure to state a claim. The Court, employing a liberal construction,[2] sustained Defendants' motion. The Court found Plaintiff's allegations under 15 U.S.C. § 1681s-2(a) failed to state a claim because the FCRA does not permit private law suits to enforce that section. The Court found Plaintiff's allegations under 15 U.S.C. § 1681s-2(b) failed to state a claim because Plaintiff failed to plead a triggering notice from a credit reporting agency and failed to describe the allegedly inaccurate information that was furnished. The Court allowed Plaintiff "one last attempt to amend his complaint" in order to "address the deficiencies discussed . . . as to his 1681s–2(b) claim."

Plaintiff filed his second amended complaint on September 16, 2014. Defendants again moved to dismiss Plaintiff's pleading for failure to state a claim. The Court reviewed Plaintiff's second amended complaint, including all attached exhibits, and concluded that "[a]lthough the Second Amended Complaint remains disorganized, continues to assert arguments struck down by the Court, and contains over 250 pages of exhibits" the second amended complaint "contains sufficient factual allegations, accepted as true, to state a plausible claim under 15 U.S.C. § 1681s-2(b) against the bank defendants." The Court noted that "Plaintiff's other allegations – those relating to section 15 U.S.C. § 1681s-2(a) and those against individual defendants – fail to state a claim. To the extent that Plaintiff attempts to proceed with those allegations, such claims

---

[2] For example, although the amended complaint continued to reference unattached exhibits, copy large portions of statutes and legal treatises verbatim, and present incorrect syntax and organization, the Court found "certain allegations are decipherable."

2

are dismissed." The Court granted in part and denied in part Defendants' motion to dismiss, stating:

> Plaintiff sufficiently states a claim against the bank defendants, Central Bank and Central Trust Bank, under 15 U.S.C. § 1681s-2(b). Plaintiff's other attempted claims, including those related to individual defendants and those that arise under 15 U.S.C. § 1681s-2(a), are dismissed.

Doc. 60, 7.

Shortly thereafter, Plaintiff filed a motion for summary judgment. The Court extended the parties' time for briefing that motion due to an intervening discovery dispute. Defendants filed their own motions for summary judgment at the same time they submitted their suggestions in opposition to Plaintiff's motion for summary judgment. In addition to the cross motions for summary judgment, both parties have filed various other motions that attack their opponent's compliance with court rules, orders, and procedures and seeking relief including dismissal of the case, dismissal of filings, striking filings, and monetary sanctions. The Court set and held oral arguments in order to clarify and summarize the parties' arguments with respect to the various motions filed in this case. The Court allowed the parties to submit post-hearing briefs presenting legal authority on a limited issue. The time for submitting post-hearing briefs has expired and all pending motions are now ripe for review.

## DISCUSSION

### I. Various Procedural Motions

As the Court stated during oral arguments, the Court is not inclined to award sanctions in this case based on procedural and technical errors but, instead, prefers to rule on the merits of the case. Keeping that goal in mind, the Court will discuss the parties' various procedural and sanction-based motions.

3

### A. Defendants' Motion (Doc. 80)

Defendants filed a motion to dismiss the case pursuant to Federal Rule of Civil Procedure 41(b), arguing dismissal is warranted based on Plaintiff's failure to comply with court rules and orders regarding discovery.[3] Rule 41(b) dismissals are considered an "extreme sanction" and "should be used in only in cases of willful disobedience of a court order or . . . persistent failure to prosecute a complaint." *Rodgers v. Curators of Univ. of Missouri*, 135 F.3d 1216, 1219 (8th Cir. 1998) (quoting *Givens v. A.H. Robins Co.*, 751 F.2d 261, 263 (8th Cir. 1984)). The district court must find the party "acted intentionally as opposed to accidentally or involuntarily." *Id.* The decision whether to dismiss under Rule 41(b) is largely in the discretion of the trial court. *Hunt v. City of Minneapolis, Minn.*, 203 F.3d 524, 527 (8th Cir. 2000). Under the circumstances presented here, regardless of the truth/falsity of Defendant's allegations, the Court hereby **DENIES** Defendant's motion to dismiss (Doc. 80) in light of Plaintiff's pro se status, the degree of the allegedly egregious conduct cited by Defendants, and the Court's preference for ruling on the merits of the case.

### B. Plaintiff's Motions (Docs. 96, 125, 134)

Plaintiff filed various motions requesting the Court to enter a default judgment, to dismiss or strike certain pleadings and evidence, and/or to award monetary sanctions based on Defendants' alleged procedural errors and misconduct in this litigation. (Docs. 96, 125, 134). Plaintiff cites Rules 55, 37(b)(2), 11, 8(e), 16(f), and 56(g), as well as 28 U.S.C. § 1927 and the inherent power of the Court to issue sanctions.

---

[3] Specifically, Defendants argued Plaintiff failed to "substantively and completely" respond to discovery within the time frame provided by the Court following the parties' discovery dispute teleconference. Defendants further state that Plaintiff initially failed to respond to discovery within the time required by the Federal Rules of Civil Procedure, failed to comply with local rules and the scheduling order regarding discovery disputes, and failed to comply with L.R. 26.4 by not filing certificates of service for discovery.

Plaintiff first argues that Defendants failed to defend this action because they never produced a signed contract between Plaintiff and an entity named "Central Bank" and they further admitted that Plaintiff has never been a customer of Central Bank. The Court finds these allegations are insufficient to justify default judgment. A review of the Court record shows that Defendants have exhibited a clear and consistent desire to defend this action[4] and Defendants' legal positions do not amount to a failure to defend.[5] *See Weitz Co. LLC v. MacKenzie House, LLC*, 665 F.3d 970, 978 (8th Cir. 2012) (where a defendant expresses a desire to defend against the action, such as through the filing an answer, the district court is not *required* to enter a default judgment but *may* enter a default judgment if the party's later conduct includes "willful violations of the court rules, contumacious conduct, or intentional delays" (emphasis added)); *U.S. on Behalf of & for Use of Time Equip. Rental & Sales, Inc. v. Harre*, 983 F.2d 128, 130 (8th Cir. 1993) (default judgments are "committed to the sound discretion of the district court" and "are not favored by the law").

Plaintiff next argues that certain filings and affidavits submitted by Defendants should be stricken and/or dismissed by the Court, as well as monetary sanctions awarded, because Defendants' filings and affidavits are "frivolous, incomplete, contradictory, or false." The Court disagrees. Plaintiff is free to contest the substance of the filings and affidavits submitted by

---

[4] Defendants filed three separate motions to dismiss Plaintiff's complaints, filed answers to the Second Amended Complaint, conducted discovery, set up a discovery dispute teleconference, participated in mediation, filed a motion to dismiss pursuant to Rule 41(b), filed motions for summary judgment, filed responses to all of Plaintiff's motions, and attended oral arguments. Defendants have participated in every phase of litigation and have clearly shown a desire to defend this action.

[5] See generally the Court's discussion of the summary judgment motions, below. The Court's prior orders make unequivocally clear that the sole claim surviving 12(b)(6) dismissal is Plaintiff's claim brought pursuant to 15 U.S.C. § 1681s-2(b). Defendant Central Bank of Lebanon can appropriately defend this action taking the position that it has taken (i.e. denying a relationship with Plaintiff and denying that it furnished any credit information related to Plaintiff; in essence, arguing that Plaintiff sued the wrong "Central Bank" entity). The remaining Central Banks were/are fictitious names registered to The Central Trust Bank; thus, Plaintiff's suit effectively seeks to sue The Central Trust Bank d/b/a Central Bank. The Central Trust Bank has clearly defended this suit by claiming its investigation was reasonable in light of the notice received from the credit reporting agencies.

5

Case 6:13-cv-03433-MDH   Document 145   Filed 05/18/15   Page 5 of 16

Defendants and to cite alleged inconsistencies, omissions, and inaccuracies contained therein. However, the alleged inconsistencies, omissions, and inaccuracies cited by Plaintiff do not warrant sanctions because they are unfounded, insignificant, and/or minor.[6] The Court is not

---

[6] Plaintiff cites the following alleged errors:
  (1) Defendant Central Bank of Lebanon's suggestions in support of summary judgment include a "false statement" by saying "Central Bank has no affiliation with CTB" because the correct corporate name is The Central Trust Bank and The Central Trust Bank is the 100% owner of Central Bank X00126219 and Central Bank X00189569. The Court notes that Defendant's suggestions indicate Defendant is using "Central Bank" to refer to Central Bank of Lebanon (#K00002095) and "CTB" to refer to The Central Trust Bank; therefore, Defendant is stating that Central Bank of Lebanon has no affiliation with The Central Trust Bank, which Plaintiff has not shown is a false statement.
  (2) The affidavit of Ron Medin contradicts Defendants' statement that only two defendants remain (Central Bank of Lebanon and The Central Trust Bank) because Mr. Medin states Central Bank #X00126219 is active and Central Bank #X00189569 expired after Plaintiff's credit card was issued. The Court notes that these statements are not necessarily contradictory because the two Central Banks cited by Mr. Medin are fictitious names registered to The Central Trust Bank.
  (3) Patrick McGinnis submitted a false affidavit by stating Central Bank of Lebanon issues its own credit cards when, in reality, its credit cards are issued by TCM Bank. The Court notes that Defendant clarified Mr. McGinnis's statement: "To the extent Mr. McGinnis' affidavit could be faulted, it was only for failing to specify (with regard to a fact that is not material to Plaintiff's claim) that CBL issued its own credit cards 'at all times relevant to Plaintiff's claims.'" The Court rejects Plaintiff's allegations of perjury related to this statement.
  (4) Mr. Medin's affidavit is incomplete because he states that The Central Trust Bank does not issue credit cards for Defendant Central Bank of Lebanon but fails to state that The Central Trust Bank does issue credit cards in general. The Court notes that Defendant The Central Trust Bank does not deny that it issues credit cards or issued a credit card to Plaintiff; therefore, this dispute is immaterial.
  (5) Mr. Gerling fails to state in his affidavit that a "notice of dispute" was sent to the three CRA's, that he, Stonum, and Wright failed to state the account was placed with the required notice of dispute, and that they failed to produce the required "CDV" form. The Court notes that these alleged failures to state certain information – information desired by Plaintiff – does not render the affidavits improper and, if Plaintiff believes such omissions have a material impact on his claims, he is free to argue such omissions in support of his motions for summary judgment or during cross-examination at trial.
  (6) Mr. Gerling and Mr. Stonum knowingly and intentionally submitted "incomplete affidavits" by failing to mention or show a contract allowing the three Central Bank Defendants to submit Central Bank as a creditor. The Court notes that these alleged failures to state certain information – information desired by Plaintiff – does not render the affidavits improper and, if Plaintiff believes such omissions have a material impact on his claims, he is free to argue such omissions in support of his motions for summary judgment or during cross-examination at trial.
  (7) Ms. Reid stated that a record is made when Central Bank of Lebanon receives a dispute but she failed to clarify which type of account (home, loan, etc.). The Court notes that the allegedly missing detail from Ms. Reid's affidavit does not render the affidavit improper and, if Plaintiff believes such omission has a material impact on his claims, he is free to argue such omission in support of his motions for summary judgment or during cross-examination at trial.
  (8) Ms. Howell stated that if Plaintiff had opened an account with Central Bank it would be in the customer data base of Central Bank but Defendants Gerling and Stonum stated that Plaintiff's account was opened with The Central Trust Bank. The Court notes that the statement by Ms. Howell – Central Bank of Lebanon's Vice President of Bookkeeping – can be reasonably read to say that if Plaintiff had opened an account with Central Bank of Lebanon then it would be in the customer data base of Central Bank of Lebanon.

convinced that Defendants' filings were submitted for an improper purpose or that the affidavits were submitted in bad faith. Moreover, Plaintiff suffered no prejudice from Defendants' allegedly "frivolous, incomplete, contradictory, or false" documents. The Court will consider Plaintiff's arguments in determining the undisputed material facts for summary judgment purposes but sanctions are not warranted against Defendants in any form (strike, dismissal, monetary, default, or otherwise).[7]

Plaintiff also argues that sanctions are warranted based on the alleged misconduct of defense counsel. Plaintiff claims defense counsel falsified service by leaving a certificate of service blank, failed to sign and date a motion, answered discovery five days late, failed to appear at mediation, and procured a falsified affidavit. Upon review, the Court finds that the alleged misconduct either did not occur or is overstated and did not result in prejudice.[8] Moreover, to the extent that defense counsel has committed minor technical errors, Plaintiff is also guilty of minor technical errors. As stated above, the Court wishes to proceed to the merits

---

[7] *See St. Louis Produce Mkt. v. Hughes*, 735 F.3d 829, 832 (8th Cir. 2013) ("Striking one party's pleadings [under Rule 37(b)] is a severe sanction that may ineluctably lead to judgment for the other side. This sanction thus should be applied only where there is an order compelling discovery, a willful violation of that order, and prejudice to the other party. . . . A court should impose the sanction of dismissal only after finding that the sanctioned party acted willfully and in bad faith."); *see also Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) ("Despite this broad discretion however, striking a party's pleadings is an extreme measure, and, as a result, we have previously held that '[m]otions to strike under Fed.R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted.'"); *see also* Fed. R. Civ. P. 56(h), 2010 Amendment ("Sanctions are made discretionary, not mandatory, reflecting the experience that courts seldom invoke the independent Rule 56 authority to impose sanctions").

[8] As to the incomplete certificate of service, defense counsel admits that she initially failed to complete the certificate of service but she notes that Plaintiff does not contest that he received actual service, Plaintiff did not seek additional time to respond to the motion, and defense counsel later submitted a corrected certificate of service with the Court. As to the alleged failure to sign and date that motion, a review of the motion shows that it was signed by defense counsel (Doc. 81). As to defense counsel's alleged late submission of discovery responses to Plaintiff, defense counsel states that the discovery requests were dated and mailed the same day she placed them into the mail per Fed. R. Civ. P. 5(b)(2); thus, service was complete on that date and the responses were timely. As to the failure to appear at mediation, defense counsel admits that she improperly recorded the time mediation was to begin and arrived forty-five minutes late; nonetheless, the uncontested facts show that the parties and mediator conducted a telephone conference later that day and were unable to reach an agreement. As to the allegedly falsified affidavit(s), see the Court's footnote 7 and also note that the allegedly falsified information was not material or prejudicial to Plaintiff.

7

of Plaintiff's claims rather than spend judicial resources and time deciding minor technical disputes that resulted in no prejudice to the parties. Based on the foregoing, the Court finds that sanctions are not warranted for the alleged misconduct of defense counsel. *See, e.g., Schubert v. Pfizer, Inc.*, 459 F. App'x 568, 573 (8th Cir. 2012) ("In *Sentis*, we reversed the district court's sanction of dismissal with prejudice, concluding such an order was an abuse of discretion when the evidence only clearly supported one minor, technical violation—a violation neither willful nor prejudicial.").[9]

In accordance with the foregoing discussion, the Court hereby **DENIES** Plaintiff's various procedural motions and motions for sanctions (Docs. 96, 125, 134).

## II. Motions for Summary Judgment

Upon review, the Court finds Defendants' motions for summary judgment dispose of the case. Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty*

---

[9] *See generally Perkins v. Spivey*, 911 F.2d 22, 36 (8th Cir. 1990) ("The standard under § 1927 and Rule 11 is whether the attorney's conduct "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court."); *Happy Chef Sys., Inc. v. John Hancock Mut. Life Ins. Co.*, 933 F.2d 1433, 1439 (8th Cir. 1991) (noting deference to trial court in decision to award sanctions based on "trial court's familiarity with the case, parties, and counsel"); *Lee v. L.B. Sales, Inc*., 177 F.3d 714, 718 (8th Cir. 1999) ("Because section 1927 is penal in nature, it should be strictly construed so that it does not dampen the legitimate zeal of an attorney in representing his client. The imposition of sanctions is a serious matter and should be approached with circumspection." (internal quotations and citations omitted)).

8

Case 6:13-cv-03433-MDH   Document 145   Filed 05/18/15   Page 8 of 16

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). To do so, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### A. Undisputed Material Facts[10]

In 2007, Plaintiff opened a deposit account and applied for a credit card through Boone County National Bank, an affiliated member of The Central Trust Bank. The Central Trust Bank processed Plaintiff's credit card application and issued a credit card to Plaintiff. Purchases were made on Plaintiff's credit card in November 2007, January 2008, and February 2008. In February 2008, Plaintiff's credit card account became two months delinquent and his charging privileges were suspended. In April 2008, the account was closed for non-payment. On the date of closing, the account's outstanding balance was $1,477.50. As of that date, Plaintiff had not disputed any charge listed on his credit card statements. The account's final negative balance was $1,546.15. As a matter of routine practice, The Central Trust Bank reported Plaintiff's delinquent account to the credit reporting agencies. The Central Trust Bank ceased internal collections activities on Plaintiff's account on or around June 2008 and external collections activities on Plaintiff's account on or around February 2009. Plaintiff never paid the $1,546.15 balance.

In January and February of 2009, Plaintiff requested documentation regarding his credit card account from The Central Trust Bank. Plaintiff's letter stated that "[y]our company is currently reporting a negative information to the major credit bureaus regarding the above

---

[10] These undisputed material facts are based on the documentary evidence submitted by the parties (credit reports, letters, notices, etc.) along with the uncontroverted factual assertions in the various affidavits submitted by the parties. Plaintiff's objections to Defendants' affidavits (see above at footnote 6) have been considered by the Court in rendering these undisputed material facts. The Court notes that Plaintiff has failed to properly support many of his assertions of fact and he has failed to properly address the assertions of fact made in Defendants' statements of uncontroverted material facts, *see* L.R. 56.1; therefore, pursuant to Federal Rule of Civil Procedure 56(e), the Court may "consider [those] fact[s] undisputed for purposes of the motion."

9

referenced account" and "[b]ased on my recollection and my records, I can find no reason for you reporting such a history." The Central Trust Bank mailed the requested information (credit card application, statements, etc.) to Plaintiff at the address listed on Plaintiff's letter on or around January 9, 2009. The mail returned as "not deliverable." The Central Trust Bank again mailed the requested information to Plaintiff on or around February 19, 2009 but the mailing, which was sent to the address listed on the utility bill submitted by Plaintiff, was returned as "refused."

On or about March 20, 2010, Plaintiff notified Transunion, Experian, and Equifax via certified mail that he disputed certain information contained in his credit report. The Central Trust Bank received a notice of disputed information from Experian via e-OSCAR on May 18, 2010 regarding Plaintiff's account. The notice stated: "Consumer states inaccurate information. Provide or confirm complete ID and account information." The Central Trust Bank assigned employee Rochelle Wright to investigate the disputed account. Ms. Wright, pursuant to routine practice of The Central Trust Bank, investigated the accuracy of the account by verifying the customer's personal information and the account information. She then reported the results of her investigation to Experian via the e-OSCAR system on May 19, 2010, stating: "Account information accurate as of date reported."[11] The Central Trust Bank received no other notices of disputed information from the credit reporting agencies regarding Plaintiff or his account.

Plaintiff sent a letter directly to The Central Trust Bank on February 7, 2012 stating that the purpose of the letter was to provide a "notice that your claim is being disputed" and a

---

[11] Although Plaintiff states "Defendant's [sic] failed to report the results of the investigation to the CRA's," the thirty-five exhibits cited by Plaintiff to support that assertion do not present any factual evidence to show Defendant failed to report the results of its investigation to the credit reporting agencies. Additionally, any support for Plaintiff's assertion provided in those exhibits does not suffice to create a genuine issue of material fact in light of the evidence submitted by Defendant (including the affidavit of Mr. Stonum and the documentary evidence attached to his affidavit) and the markings on Plaintiff's credit reports that show the disputed information was verified.

10

"request for validation made pursuant to the Fair Debt Collection Practices Act." The Central Trust Bank responded via letter dated February 24, 2012 and asked Plaintiff to fill out the attached form in order to process his request. Plaintiff submitted another letter to The Central Trust Bank on March 7, 2012, repeating the statements from his prior letter, requesting validation, and threatening that "if any negative mark is found on any of my credit reports by your company or the company that you represent I will not hesitate in bringing legal action against you for the following" and citing the FDCPA, FCRA, and defamation of character. The Central Trust Bank responded via letter dated March 22, 2012 and stated the FDCPA does not apply because they are not a third party collector and directing Plaintiff to complete the enclosed form for any other questions. Plaintiff sent another letter to The Central Trust Bank nearly a year later on February 19, 2013, which again requested validation of debt and cited the FDCPA and FCRA. The Central Trust Bank responded via letter dated March 18, 2013, explaining that it had never received the previously requested form from Plaintiff, that the FDCPA does not apply to The Central Trust Bank but the FCRA does apply, and that "[i]f you would like to dispute the information that has been reported to the credit bureaus, you must complete and return to us the enclosed dispute form." None of Plaintiff's three letters identified the basis for his dispute (fraud, paid, etc.) and Plaintiff never provided a copy of the requested form to The Central Trust Bank.[12]

Plaintiff filed the instant suit in November of 2013. Plaintiff brings this action against The Central Trust Bank and Central Bank because both names were listed on his credit reports. The Central Trust Bank is a domestic trust company registered with the Missouri Secretary of State (charter # U0000057). Central Bank is a fictitious name registered to The Central Trust

---

[12] The Court notes the actions of Plaintiff (i.e. failing to provide an appropriate address / accept service of the documents requested, failing to return the requested dispute form, failing to include the reason he was disputing the debt, etc.) tend to show that he was more interested in litigation that he was in getting the alleged dispute resolved.

Bank with the Missouri Secretary of State's Office (fictitious registration # X00126219 and # X00189569). Central Bank is also a domestic bank located in Lebanon, Missouri and registered with the Missouri Secretary of State's Office (charter # K00002095). The domestic bank named "Central Bank" and located in Lebanon, Missouri was not – at all times relevant to this suit – affiliated with, owned, operated, managed, or controlled by The Central Trust Bank. Plaintiff has never been a customer of Central Bank in Lebanon, nor has he ever had a contractual relationship with Central Bank in Lebanon. Central Bank in Lebanon has never reported credit information about Plaintiff to a credit reporting agency, nor has it ever received any notices of dispute from a credit reporting agency related to Plaintiff.

### B. Application

Title 15 U.S.C. § 1681s-2(b) describes the duties of a furnisher of credit information upon receipt of a notice of dispute from a credit reporting agency regarding the completeness or accuracy of information furnished. That section states that a furnisher must:

> **(A)** conduct an investigation with respect to the disputed information;
> **(B)** review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> **(C)** report the results of the investigation to the consumer reporting agency;
> **(D)** *if the investigation finds that the information is incomplete or inaccurate*, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> **(E)** *if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation* under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
> > **(i)** modify that item of information;
> > **(ii)** delete that item of information; or
> > **(iii)** permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1) (emphasis added).

To prevail under subsection (A), the case law indicates that Plaintiff must show: (1) defendant is a furnisher and received a triggering notice from a credit reporting agency; (2) defendant failed to conduct a reasonable investigation; and (3) the reported information was, in fact, inaccurate. *See Anderson v. EMC Mortgage Corp.*, 631 F.3d 905 (8th Cir. 2011); *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1029-30, 1040 (D. Minn. 2010) aff'd, 413 F. App'x 925 (8th Cir. 2011). Whether the furnisher's investigation is considered reasonable depends on what is stated in the notice of dispute from the credit reporting agency; a furnisher "need investigate only what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Anderson*, 631 F.3d at 908. For example, "a more limited investigation may be appropriate when CRAs provide the furnisher with vague or cursory information about a consumer's dispute." *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010). Reasonableness of the investigation is typically a question for the jury but "summary judgment is proper if the reasonableness of the defendant's procedures is beyond question." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)

### 1. Defendant Central Bank (in Lebanon) (#K00002095)

The parties agree that Plaintiff had no relationship with Defendant Central Bank located in Lebanon, Missouri. The undisputed facts show that the Central Bank in Lebanon did not furnish any credit information related to Plaintiff and did not receive any notice of dispute from a credit reporting agency related to Plaintiff. Moreover, the undisputed facts show that, during at all times relevant to this suit, Central Bank in Lebanon was not affiliated with, owned by, operated by, managed by, or controlled by The Central Trust Bank. Therefore, Defendant Central Bank in Lebanon (#K00002095) owed no duties to Plaintiff under 15 U.S.C. § 1681s-2(b)(1) and is entitled to summary judgment on Plaintiff's claims against it.

**2. Defendant The Central Trust Bank d/b/a Central Bank (#X00126219 and #X00189569)**

The undisputed material facts do show, on the other hand, that Defendant The Central Trust Bank issued a credit card to Plaintiff, reported Plaintiff's delinquent credit card account to credit reporting agencies, and received a notice of dispute from Experian. Defendant The Central Trust Bank admits these facts but argues it is entitled to summary judgment because the investigation conducted by The Central Trust Bank upon notice from Experian of the disputed information was reasonable as a matter of law. The Court agrees.

Here, the notice of dispute stated only that: "Consumer states inaccurate information. Provide or confirm complete ID and account information." An employee of The Central Trust Bank verified Plaintiff's personal information and account information, and reported back to Experian that "[a]ccount information accurate as of date reported." Courts have held similar investigations based on similar vague and cursory notices of dispute are reasonable as a matter of law. *See Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (reasonable investigation where furnisher received notice of dispute that stated customer disputing charge on the basis that the account did not belong to him and furnisher merely verified the customer's name, address, and date of birth and sent the CDV back to the credit reporting agency); *Stroud v. Bank of Am.*, 886 F. Supp. 2d 1308, 1315 (S.D. Fla. 2012); *Howard v. Pinnacle Credit Servs., LLC*, No. 4:09-CV-85(CDL), 2010 WL 2600753, at *4 (M.D. Ga. June 24, 2010); *see generally Edeh v. Midland Credit Mgmt., Inc.*, 413 F. App'x 925, 926 (8th Cir. 2011). Thus, the Court finds that The Central Trust Bank did not, based on the undisputed material facts, violate the provisions of subsection (A).[13]

---

[13] Plaintiff claims Defendant admitted no investigation was conducted from May 13, 2010 to March 18, 2013 based on a letter from Al Stonum to Defendant dated March 18, 2013. The Court has reviewed that letter and finds no indication in that letter that The Central Trust Bank did not conduct an investigation in response to a notice of dispute from a credit reporting agency in May 2010. Plaintiff appears to take issue with Defendant's investigation,

14

Plaintiff does not argue that Defendants failed to review all relevant information furnished by the credit reporting agency under subsection (B) or that Defendants failed to report the results of the investigation under subsection (C). To the extent that Plaintiff does attempt to proceed under those sections, he has failed to presented evidence that supports those claims. Subsections (D) and (E) are only applicable where "the investigation finds that the information is incomplete or inaccurate" and where "an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified[.]" Here, Defendant The Central Trust Bank had no duties under subsection (D) and (E) because Defendant's investigation did not reveal incomplete or inaccurate information.

Accordingly, the Court finds the uncontroverted material facts show Defendant The Central Trust Bank d/b/a Central Bank (#X00126219 and #X00189569) complied with the provisions of 15 U.S.C. § 1681s-2(b) and is entitled to summary judgment against Plaintiff.

### 3. Plaintiffs Other Claims

In addition to his arguments under 15 U.S.C. § 1681s-2(b), Plaintiff continues to make arguments under various portions of 15 U.S.C. § 1681s-2(a) [a.k.a. "FCRA § 623(a)"]. Plaintiff specifically cites alleged violations of FCRA § 623(a)(1)(A)-(C), (a)(2), (a)(3), and (a)(7). In making these arguments, Plaintiff exhibits clear disregard and disrespect for the Court's previous orders (Docs. 41, 60), which have twice dismissed Plaintiff's claims brought pursuant to FCRA § 623(a). *See* 15 U.S.C. § 1681s-2(c), (d); *Lee v. Wells Fargo Home Mortgage*, 11-0633-CV-W-HFS, 2011 WL 5025877 (W.D. Mo. Oct. 21, 2011). Plaintiffs' arguments in this regard are rejected.

---

or lack thereof, in response to his direct dispute. The Court notes that such direct dispute claims were previously dismissed when the Court dismissed all actions brought under 15 U.S.C. § 1681s-2(a).

Plaintiff also asserts new arguments for the first time in his summary judgment briefing under 15 U.S.C. § 1681i(a)(2) and 15 U.S.C. § 1681b(f). These newly-added claims are improperly injected at the current stage of litigation. This is especially true where, as here, Plaintiff was given three opportunities to file his complaint; he never previously mentioned these claims; and he offered no explanation or excuse as to why these new claims could not have been previously added. Moreover, the newly alleged FCRA violations concern duties of credit reporting agencies – none of whom are defendants in this case – and the circumstances under which it is improper to use or obtain a consumer credit report – a claim that would require factual allegations and obligations distinct from those of furnishers under 15 U.S.C. § 1681s-2(b)).[14] Plaintiff's purported claims under these newly-cited FCRA sections are rejected.

## DECISION

Upon review of the written briefs and evidence in this case, along with the legal arguments provided by the parties, the Court finds summary judgment appropriate in favor of Defendants and against Plaintiff. Therefore, Defendants' motions for summary judgment (Docs. 86, 88) are hereby **GRANTED** and Plaintiff's motion for summary judgment (Doc. 72) is **DENIED**. Because summary judgment is appropriate, Plaintiff's requested amendment to add additional parties is futile and Plaintiff's motion to amend (Doc. 107) is therefore **DENIED**. Furthermore, for the reasons discussed in this order, all pending procedural and sanction-based motions (Docs. 80, 96, 125, 134) are hereby **DENIED**.

**IT IS SO ORDERED.**

Date: May 18, 2015   */s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**

---

[14] Section 1681i(a)(2) states the duty for credit reporting agencies to provide prompt notice of a dispute to the furnisher of information. Section 1681b(f) states that using or obtaining a consumer credit report is prohibited unless certain factors are met.